CASE No. 1122.

MENDENHALL v. MOWER.

1. The rules governing limitations in wills, deeds and other instruments are now generally the same, whether the property affected be real or personal.
2. Some differences between limitations in a deed and will, stated.
3. The effect of a limitation to issue in a deed, and whether confined to the issue living when the particular estate determines, depend upon the intent of the grantor to be gathered from the whole instrument.

4. The word issue may describe (1) a class of persons to take as joint-tenants with other parties named; or (2) a class who are to take at a definite period as purchasers; or (3) an indefinite succession of lineal descendants who are to take by inheritance.

5. Where there is a direct gift to the issue in the first instance with a limitation over, on the death of the first takers without lawful issue, to the survivor of such takers who, at the death of testator, are persons *in esse*, and there is no further limitation to issue, the first takers hold for life, the limitation over not being too remote; and in the absence of words showing an intention that the survivor shall take a transmissible interest, the presumption will be that he is to take personally.

6. Hence, where a purchaser of real property (which was sold under execution against D.) made a declaration of trust in 1847, that after the repayment to him of the purchase-money, he would hold the property in trust "for the use of A. (wife of D.) for life, and after her death for the use of B. and C., and their respective issue, or the survivor of them (the said B. and C.), if either of them should die without issue, and if both should die without issue, then for the use of D.," &c.—neither B. nor C. then having issue. *Held*, that B. and C. took a life-estate, after the death of A., with remainder to their respective issue as purchasers.

7. Under proceedings had in the Court of Equity, subsequent to the act of 1853 (12 *Stat.* 262), a portion of this land, acquired by A. through inheritance, previous to the sheriff's sale, was sold, and the proceeds were applied first to a debt due by A., and the balance was ordered to be held subject to the same trusts as before declared. *Held*, that the result is the same as above stated, for the property so sold was converted into personalty and settled by this order of court, and is governed by the legislative construction given to the words "dying without issue," contained in the act of 1853.

8. The original trustee being dead, a new trustee should be appointed to preserve the estate for the remaindermen.

---

Before WALLACE, J., Newberry, May, 1880.

This was an action instituted in February, 1880, by James K. Mendenhall and his sister, Pauline Eliza Scott, against George S. Mower, trustee, Nancy Mayes, as administratrix of William G. Mayes, deceased, and all the children and heirs of deceased children of the plaintiffs.

The case called for the construction of the following instrument:

"THE STATE OF SOUTH CAROLINA.—I, John Belton O'Neall, having, on yesterday, purchased at the commissioner's sale, the

lands and mills, in Newberry district, known as Mendenhall's, the said tract of land containing 1,050 acres, subject to the inheritance of Mrs. Phœbe Mendenhall, on 400 acres on which are the mills and houses, at and for the sum of $2,600, and the following slaves, viz.: Frank, at $600; Jordan, at $500; John, at $610; Allen, at $510; Peter, at $360; Bob, at $250; Jupiter, and wife, Ritta, and their children, Tilda, Alsey, Frank, Eliza and Minerva, at $2,405; Calvin, at $580; Jacob, at $600; Tilda, at $400; Abbey, at $350, and Siller, at $150, making a total for the said slaves of $7,540. And, whereas, the said land and slaves so purchased were once the property of Dr. M. T. Mendenhall, and at his request, I have consented to hold the same upon the following trusts: 1. For the payment of $1,900, the balance of the purchase-money of the land and mill, ($700 having been to-day paid,) and of $7,540, the aggregate price of the said slaves. If these sums be paid by Mrs. Phœbe Mendenhall, Pauline Eliza Mendenhall, or James K. Mendenhall, the wife and children of Dr. Mendenhall, or by the said Dr. Mendenhall as their agent, at the several times at which my bond to the commissioner, and notes in the bank, shall be severally due; then, in the second place, I am to hold the said land, mills and slaves for the use of Mrs. Phœbe Mendenhall for life, and after her death for the use of Pauline Eliza Mendenhall and James K. Mendenhall, and their respective issue, or the survivor of them (the said Pauline and James); if either of them should die without issue; if both should die without issue, then for the use of the said Dr. M. T. Mendenhall, or such person as he may direct and appoint; but if failure should be made in such payments, then I am to sell the said property or so much of it as may be necessary to make the payments. If at any time it be thought advisable by myself and Dr. Mendenhall to sell part of the said property, real or personal, it will be perfectly consistent with the trust intended that such sale should be made. The said land and property are placed in the hands of Dr. Mendenhall as my agent until the purchase-money be paid as hereinbefore stated, and after that as agent for his family.

" Witness my hand and seal this 5th January, 1847.

"JOHN BELTON O'NEALL. [L. s.]

"Signed and sealed in our presence,
"G. W. GARMANY,
"D. M. COLE."

In January, 1863, Judge O'Neall conveyed all of this land, (except the 400 acres and 157 acres, afterwards sold,) in two tracts,

to the two plaintiffs in this action, to each one tract, to him and her for life, with remainder to their children, respectively. Subsequently, the 400 acres and 157 acres were sold, as stated in the opinion of the court, which also states other material facts.

The Circuit decree was as follows:

On hearing the pleadings and evidence herein, and argument of counsel thereon, it is ordered, adjudged and decreed that the plaintiffs are only entitled to the net income of the trust-estate in question in this action jointly and equally for and during their natural lives, and then, upon the death of either, leaving no issue at the time of his or her death, the survivor shall take the whole income for and during his natural life; and if either shall die, leaving issue at the time of his or her death, the survivor shall take one moiety of said income and the issue of the deceased the other moiety for and during the said remainder of the said survivor's life; and that upon the death of such survivor, the respective issue of the plaintiffs living at the time of the death of each, shall be absolutely entitled to said trust-estate *per stirpes* free and discharged from all trusts. It is further ordered that George S. Mower be and is hereby appointed trustee, in whom the said trust estate shall vest, to be administered by him for the purposes and upon the terms and limitations hereinbefore set forth, upon his entering into a bond to the clerk of this court, &c.

From this decree plaintiffs appealed upon the following exceptions:

1. Because the Circuit judge held that the appellants, James K. Mendenhall and Eliza P. Scott, have only a life-estate in the property in question; whereas, it is submitted, he should have held that they have an absolute fee-simple estate in it.

2. Because the Circuit judge erred in holding that the appellants have only a life-interest in the said property; whereas, it is submitted, he should have decided that they had at least a fee-conditional in the lands, and should have that estate in any lands in which the funds may be invested, and an equivalent estate now in the funds.

3. Because, whatever estate the appellants may have in the property, there is no necessity for a trustee to hold and administer the property perpetually.

4. Because the Circuit judge erred in holding that the said estate should be kept together until the death of both appellants before division; whereas, it is submitted, he should have held the property divisible at the death of either of them, allowing that they have only life-estates.

*Messrs. Y. J. Pope* and *J. F. J. Caldwell*, for appellants.

*Mr. T. S. Moorman*, contra.

November 21st, 1881. The opinion of the court was delivered by

SIMPSON, C. J. In 1847, the property, real and personal, of Dr. Mendenhall, then of Newberry county, was sold at public sale, we suppose at the instance of his creditors. The Hon. John Belton O'Neall became the purchaser, paying part of the purchase-money in cash, and securing the remainder by his notes.

The object of Judge O'Neall in making the purchase was to befriend the family of his friend, Dr. Mendenhall, and, to this end, immediately after the sale, he executed an acknowledgment of trust embracing the entire property purchased, to wit, a large tract of land and a number of slaves. In this acknowledgment he stated that he held the property in trust: *First.* For the payment of the purchase-money by Mrs. Phœbe Mendenhall, Pauline Eliza Mendenhall and James K. Mendenhall, the wife and children of Dr. Mendenhall, or by Dr. Mendenhall, their agent. *Second.* For the use of Mrs. Phœbe Mendenhall for life, and after her death, for the use of Pauline Eliza Mendenhall and James K. Mendenhall and their respective issue, or the survivor of them, the said Pauline and James, if either of them should die without issue; if both should die without issue, then for the use of the said Dr. M. T. Mendenhall, or such person as he might appoint.

Some time after this, and after the death of Judge O'Neall in 1863, but at what time is not stated, proceedings were instituted

by a judgment creditor of Mrs. Phœbe Mendenhall, the life-tenant, to make a portion of the real estate embraced in the acknowledgment of Judge O'Neall, to wit, four hundred acres, claimed to be the inheritance of Mrs. Phœbe Mendenhall, liable to his judgment.

As the result of this proceeding, an order was passed by the court directing this land and also an additional quantity, to wit, one hundred and fifty-seven acres, part of said trust-estate, to be sold, the proceeds to be applied first to the payment of the judgment debt of Mrs. Mendenhall, and out of the remainder, after payment of expenses, &c., $1,000 was directed to be paid over to Mrs. Mendenhall, the balance to be held by a trustee, thereafter to be appointed, on the same trusts declared and set forth in the second clause of the deed made by the Hon. John Belton O'Neall, dated January 5th, 1847 ; and on June 1st, 1871, William G. Mayes, in the same proceeding, was appointed trustee, to wit : "For the use of Mrs. Phœbe Mendenhall for life, and after her death for the use of Pauline Eliza Scott and James K. Mendenhall and their respective issue, or the survivor of them, if either of them should die without issue."

Mrs. Phœbe Mendenhall died in 1874, her husband, Dr. Mendenhall, having died long before. The appointment of W. G. Mayes, as trustee, was revoked in 1878, and George S. Mower, one of the defendants, was appointed in his stead by the Probate Court for Newberry county. The amount of the trust fund has not been ascertained, but it is supposed that the *corpus* will not fall short of $5,500.

The plaintiffs, appellants, claim the property as an absolute estate, and that it should be turned over to them without the intervention of a trustee. The defendants, respondents, who are the children—one of the plaintiff, Pauline Eliza, and the others of James K. Mendenhall—claim that plaintiffs are entitled to a life-estate only, and that they, the children, are entitled in remainder to the property upon the death of the plaintiffs, and that a trustee is necessary.

Upon the hearing below, Judge Wallace sustained the view of the defendants in so far, at least, that the plaintiffs, appellants, were adjudged to be entitled to a life-estate only. As to the

remainder, he held that such issue as might be alive at the death of appellants would take *per stirpes.* From this decree, the plaintiffs appealed. The grounds of appeal, though several in number, raise but two questions:

1. What estate or interest did the parties, appellants and respondents, take respectively under the settlement made by order of the court of the fund in question?

2. How far is a trustee necessary?

It seems to have been assumed in the argument that the property in question, though, as matter of fact, in its present shape it is money, and, therefore, personalty, yet, having been converted into money by the sale of realty, should be regarded as realty, and that the questions involved should be discussed as if in fact it was realty.

Formerly there was a wide distinction between these two species of property, especially as to the limitations in instruments, deeds and wills by which they were transferred and conveyed. This distinction, however, growing less and less marked, as personal property in the course of years rose in value as compared to realty, has at length almost passed away, until now the rules governing the construction of limitations as to the two are generally the same. *Hill* v. *Hill, Dudley Eq.* 83. It will not be necessary, therefore, to determine positively whether the property in contest is to be regarded as personal or real property. And especially is this unnecessary in this case, when we find that we are remitted in the order of the court settling this property to the acknowledgment of trust executed by Judge O'Neall, in 1847, as to the terms upon which the settlement was made.

The question, then, before the court, must turn upon the construction of this acknowledgment of trust. In taking up this instrument for consideration, emanating as it did from the mind of Judge O'Neall, under the promptings of that noble generosity which was one of the great characteristics of his nature, and which so often moved him in private life to the rescue of falling friends, remembering how long and how steadily that mind shed its luster upon the pages of our judicial history and how ably it assisted in building up and establishing the very principles upon

which questions like this now before the court should be decided, as appears in many cases which arose during the period of his distinguished judicial career in this State, awed as if I were in his very presence, I feel great reluctance in confessing the hesitancy and doubt by which we have been embarrassed in endeavoring to reach the true intent of this paper. Nevertheless, from whatever cause it may spring, we are compelled to admit that the questions involved have been unusually difficult and perplexing. We have, however, reached a conclusion sustained, we think, by the authority of decided cases, and one which we hope will not defeat the benevolent purpose of the author of this paper.

The plaintiffs contend for a construction that will vest this property absolutely in them, dispensing with the necessity of a trustee. The defendants claim that they should be adjudged, as issue, to take as purchasers at the death of plaintiffs, by way of remainder, after the life-estate of their parents, and that the trustee should continue to hold to carry out this trust.

The terms of the deed are: "After the death of Phœbe Mendenhall, for the use of Pauline Eliza and James K. Mendenhall and their respective issue, or the survivor of them, the said Pauline and James, if either of them should die without issue. If both should die without issue, then for the use of Dr. Mendenhall, or such person as he may direct or appoint."

Now it has been well established as to personal property, where an estate is given to one and his issue, with a limitation over, to take effect at the death of the first taker, that the first taker has a life-estate only, and his issue living at his death will take in remainder as purchasers. It has also been well established that where a fee in real property has been devised to one with limitation over at his death without issue at that time, the limitation will be good as an executory devise. Thus it will be seen that the turning point in both deeds and wills is the fact whether the time fixed for the limitation to take effect is the death of the first taker. If so, in a deed, the limitation over is good as a remainder, unless it should clearly appear that a fee had been given in the first instance to the first taker. In such case the limitation could not take effect in a deed as a remainder, because, the whole estate having been granted, there would be

nothing left to be embraced in a remainder. But in a will or devise a fee may be limited after a fee; the essential requirement being that the period fixed for the limitation should not be beyond a life or lives in being and twenty-one years thereafter. If fixed within that time the original fee will be defeated by the happening of the contingency specified, and the second fee will spring into existence at that moment by executory devise.

The paper under consideration is a deed, and if the terms used had been to Pauline Eliza and James, and their "heirs," they would have conveyed a fee beyond all doubt, and in that case no remainder could have been limited, because, the whole having been conveyed, there would have been nothing remaining to be made the subject of a remainder. But the term used in this case is the word "issue." This, as to real property, is not the apt word of inheritance, and does not in itself convey a fee in a deed.

Hence, when this word is used in a deed, the question is open as to the intent of the grantor, and whether a limitation over can take effect when this word is used will always depend upon the fact whether, from the whole instrumemt taken together, the court can see that the time fixed for the limitation is at or beyond the death of the first taker; the rule being as to remainders that they must take effect during the continuance of the particular estate, or *eo instante* that it determines, otherwise they will fail.

The word "issue" is susceptible of three meanings: 1. It may describe a class of persons who are to take as joint-tenants with the parties named. 2. It may be descriptive of a class who are to take at a definite and fixed time as purchasers; and, 3, It may denote an indefinite succession of lineal descendants who are to take by inheritance. Whenever this word is used, either in a deed or will, it must be used in one of these senses. The difficulty in most cases is to determine in which of these senses it has been employed.

We cannot suppose that it was used in the case at bar in the first sense. It does not appear that Pauline Eliza or James had issue in 1847 when the deed of Judge O'Neall was executed, and he could hardly have intended that their issue, as they might come into existence thereafter, should become joint-tenants with

them, especially as Pauline and James and Mrs. Mendenhall were to pay the purchase-money of the property. Was it used in the second or the third sense?

Generally, this term, when used in a will, means an indefinite succession, and, when not controlled by subsequent words in the same instrument, this interpretation will be given to it, (see remarks of Chancellor Harper in *Henry* v. *Archer, Bailey Eq.* 536;) but it may be controlled by the use of subsequent words in such way as to demand an interpretation in accordance with the second sense as descriptive of a class who are to take as purchasers at a definite and fixed time. The next step in the inquiry is, what terms are subsequently used in this deed, and will they have the effect under the decisions of qualifying the previous use of the word "issue" so as to fix the death of the first taker at the time when the issue are to take?

We find first, in this deed, the phrase "dying without issue." This is a very common phrase in such instruments. What effect does it have? It has been often decided—so often that it has become a canon of construction—that this phrase, when standing alone, not only fails to fix a definite time for the limitation over, but it denotes, on the contrary, an indefinite succession. *Anderson* v. *Jackson*, 16 *Johns.* 381, and the cases there cited and discussed. Such being the fact, if there were no other words of qualification in this deed, we might stop our investigation at this point; but we find also the term *survivor* employed, the deed providing that if either Pauline Eliza or James should die without issue, then the estate to go to the *survivor*.

Does this word control the generality of the previous phrase, "dying without issue?" This subject has been much discussed, both in the English courts and our own, and although it is sometimes difficult to reconcile the different decisions, yet, upon a close analysis, it will be found, we think, that they have established the principle that when the term "survivor" is used, following the general phrase "dying without issue," and unaccompanied with other words indicating a transferable interest to the heirs of the survivor, that that term will always have the effect of controlling the generality of this phrase and of changing it from an indefinite failure, which it would mean when standing

alone, to a failure at a definite time, to wit, the death of the first taker, thus cutting down his estate to a life-estate, and giving a remainder to such of his issue as may then be living, or, in case he leaves no issue alive, then the remainder to go to the survivor.

One of our first cases on this subject is the case of *Guery* v. *Vernon,* 1 *N. & McC.* 69, decided in 1818. In that case there was a bequest by a father to his daughter of two slaves, but in case she died without issue, then to return to his son, Isaac. The whole court, Judge Cheves delivering the opinion, held the limitation too remote and, therefore, void. That case differs from the case before the court in the facts that there was no direct gift to the issue of the daughter, and the limitation over was to a person named, his son, Isaac, instead of to a survivor. No doubt the court concluded that Isaac was entitled to a transmissible interest, and, therefore, his being named did not indicate that he should be in existence at the death of the first taker to become invested with the remainder.

The next case we find is *Henry* v. *Felder,* 2 *McC. Ch.* 335, decided in 1827. The bequest there was of a girl to Elizabeth Conlietle, to her and the heirs of her body forever, but on *failure of issue* to go to the oldest child of his daughter, Nancy. The Court of Appeals, in an elaborate opinion, held the limitation void for remoteness. That case turned on the construction of the words *failure of issue.*

In *Manigault* v. *Deas, Bailey Eq.* 292, decided in 1829, a bequest was made of slaves to two of testator's daughters, and if either should die without leaving issue, then to the survivors. It was held that the daughters took an absolute estate. It will be observed that there was no direct gift to the *issue,* and the court could raise none by implication.

In *Postell* v. *Postell, Bailey* 390, decided 1831, a testator bequeathed his personal estate to his two sons, to them and their legal issue, and should either die without lawful issue, the said property to revert to the surviving brother *and his lawful issue.* *Held,* That the limitation was too remote and void, and that an absolute estate vested in the first taker. The word "survivor" employed in the case failed to limit the generality of the phrase dying without issue, because it was followed by the words "and

his lawful issue," showing that a transmissible interest was intended in case the brother did not survive.

In *Murray & Buchanan* v. *Walker*, 1 *Strobh. Eq.* 193, decided in 1846, there was a deed to grandchildren then alive, and also to those who might afterwards be born, with a limitation over to the survivors of the share of either that might die not leaving lawful issue. The court held that the issue of an unborn grandchild could not take under the deed, the limitation being too remote. And there are numerous other cases where the limitation, as to its remoteness, tested by other words employed, was held too remote even where the term "survivor" was also used.

On the other hand. In the case of *DeTreville* v. *Richard & Ellis*, *Bailey Eq.* 37, decided in 1827, in a devise of both real and personal property, the indefinite failure of the heirs of the body was controlled by the term *survivors*, and the devise over was held good both as to the realty and the personalty. So, too, in the case of *Stevens* v. *Patterson*, *Bailey Eq.* 42, decided in 1829, where a bequest was of personalty to a daughter, to her and the heirs of her body; but should she die without lawful issue, then to go back and be equally divided amongst the survivors of testator's children, the limitation was held good as an executory devise, the word "survivor" being held to indicate the death of the first taker as the event when the limitation should take effect.

In *Cordes* v. *Adrian*, 1 *Hills Ch.* 154, the words "surviving children" had the effect of controlling the generality of the phrase "dying without issue," and of fixing the death of the first taker as the time when the limitation was to take effect. See, also, cases *Hill* v. *Hill*, *Dudley Eq.* 71; *Terry* v. *Brunson*, 1 *Rich. Eq.* 79; *Yates* v. *Mitchell & Porter*, *Id.* 265; *Lowry* v. *O'Bryan*, 4 *Rich. Eq.* 263; *McCorkle* v. *Black*, 7 *Rich. Eq.* 407. In this last case there was a devise of land to several, to be equally divided between them, and after their death to their lawful issue, followed by a provision that if any of the devisees should die leaving no lawful issue, then their portion to be equally divided between the survivors. *Held*, that the first takers took a life-estate and the issue a remainder, as purchasers; the term "sur-

vivors" having the effect of controlling the phrase "dying without issue."

Without referring to other cases, we say that the general principle to be extracted from all the cases is that where, in the first instance, there is no direct gift to the issue, nor any mention of issue, then the word "survivor" will not restrict the generality of the previous phrase; but where there is a direct gift to the issue in the first instance, and a limitation over to a survivor or survivors of persons *in esse* on the death of the first taker, without lawful issue, the limitation will not be held too remote, unless it should appear from the will that the survivor was intended to take a transmissible interest without reference to the time of vesting in possession, and in the absence of words to show such intention the presumption is that the survivor was to take personally and not a transmissible interest. *Stevens* v. *Patterson, Bailey Eq.* 42; *Knight* v. *Ellis*, 2 *Bro.* 570; *Lampley* v. *Blower*, 3 *Atk.* 396, commented on in *Carr* v. *Porter*, 1 *McC. Ch.* 60. Now, in this case, there is both a direct gift to the issue and a limitation over to the survivor. There is nothing showing that a transmissible interest was intended; on the contrary, the terms of the deed are: "To the survivor of the said Pauline and James," showing that it was the intention of the grantor that the survivor of Pauline and James, whichever it might be, should take personally.

Under the operation of this principle, we are of the opinion that the time fixed by the declarant for the issue to take, if alive, was at the death of the first taker, and the effect of this intent was to cut down the estates of Pauline and James to a life-estate, with remainder to their respective issue, such as might, at their death, be in existence, as purchasers.

Such being the interest of the parties, we are further of the opinion that a trustee is necessary, so that the estate may be preserved for the remaindermen.

This case thus far, and for the reasons already stated, has been considered as if the property in question was real property and embraced in the deed of Judge O'Neall, executed in 1847. But the fact is, it is personalty and settled by the order of court

referred to above. When considered with reference to this order we think the result will be the same.

Although the precise date of the order is not given, yet there is no doubt that it was after the act of 1853, in reference to limitations. This act provides that the phrase "dying without issue," both in deeds and wills, where either personal or real property is disposed of, shall not be construed to mean an indefinite failure of issue, but a failure at the time of the death of the first taker.

If this act is applied to the case, it gives a legislative construction to the words under consideration, and fixes indisputably the event for the limitation over to be the death of the first taker, thus cutting down their estate to an estate for life, with remainder to such of their respective issue as may at that time be living.

It is the judgment of this court that the judgment of the Circuit Court be affirmed.

McIVER and McGOWAN, A. J.'s, concurred.